UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA R. GARCIA,<br><br>             Plaintiff,<br><br>      v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>             Defendant. | No. 2:15-cv-0384-CKD<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") finding plaintiff was not disabled for purposes of receiving Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

I.   BACKGROUND

Plaintiff, born November 25, 1960, applied on May 24, 2011 for DIB, alleging disability beginning January 1, 2008. Administrative Transcript ("AT") 154. Plaintiff alleged she was unable to work due to bipolar disorder, depression, and anxiety attacks. AT 167. In a decision

////

////

dated June 26, 2013, the ALJ determined that plaintiff was not disabled.[1]  AT 11-19.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2011.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 1, 2008 though her date last insured of December 31, 2011.
>
> 3. Through the date last insured, the claimant had the following severe impairments: bipolar disorder and history of alcohol abuse, in current remission.
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987). The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

> equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform only simple (defined as svp 1 and 2), routine tasks, occasionally interact with the public and coworkers, and never work as a team or part of a cooperative work process.
>
> 6. Through the date last insured, the claimant was unable to perform any past relevant work.
>
> 7. The claimant was born on November 25, 1960 and was 51 years old, which is defined as a "younger individual age 18-49," [*sic*] on the date last insured.
>
> 8. The claimant has at least a high school education and is able to communicate in English.
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills.
>
> 10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that the claimant could have performed.
>
> 11. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 2008, the alleged onset date, through December 31, 2011, the date last insured.

AT 13-19.

II.     ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) improperly relied on the vocational expert's ("VE") testimony to find plaintiff not disabled at step five of the analysis; and (2) improperly considered the medical opinions of Dr. Gauch and Dr. Smith when determining plaintiff's residual functional capacity ("RFC").

III.    LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial

evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

IV.   ANALYSIS

   A.   *The ALJ Properly Relied on the VE's Testimony at Step Five*

First, plaintiff argues that the ALJ erred by relying on the VE's testimony at step five because the VE's testimony regarding the occupations plaintiff could perform in light of her impairments was based on hypothetical limitations that were materially different than those contained in the ALJ's RFC determination. In support of her argument, plaintiff highlights the fact that after answering the ALJ's hypothetical that included a limitation that plaintiff could "work in the presence of others, but should not be part of a work team or cooperative work process" and concluding that there existed occupations that plaintiff could perform, the VE provided the following clarification to plaintiff's counsel: "I took the collaborative effort [limitation] to be more of working with someone concurrently on a task. Not necessarily part of a

4

group." AT 43.  Plaintiff asserts that this clarification demonstrates that the VE based his testimony that there were jobs that plaintiff could perform on a hypothetical limitation restricting plaintiff from working concurrently on a task with others, rather than the limitation that plaintiff could never work as part of a team or cooperative work process that was determined by the ALJ as part of plaintiff's RFC.  Plaintiff claims that this difference is material and means that the VE did not identify occupations that plaintiff could perform based on plaintiff's RFC as it was determined by the ALJ, thus preventing the ALJ from relying on the VE's testimony at step five.  Therefore, plaintiff asserts, the ALJ committed prejudicial error by relying on the VE's testimony to determine that there existed jobs plaintiff could perform in light of her RFC.

An ALJ may pose a range of hypothetical questions to a vocational expert, based on alternate interpretations of the evidence.  However, the hypothetical that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC determination, must account for all of the limitations and restrictions of the particular claimant that are supported by substantial evidence in the record as a whole.  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009).  "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." Id. (citation and quotation marks omitted).  However, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006).  Furthermore, as the Ninth Circuit Court of Appeals has observed, an ALJ may synthesize and translate assessed limitations into an RFC assessment (and subsequently into a hypothetical to the vocational expert) without repeating each functional limitation verbatim in the RFC assessment or hypothetical.  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (holding that an ALJ's RFC assessment that a claimant could perform simple tasks adequately captured restrictions related to concentration, persistence, or pace, because the assessment was consistent with the medical evidence).

/////

/////

Here, the hypothetical the ALJ ultimately relied on to support his step five finding that there existed jobs that plaintiff could have performed given her limitations fully encompassed the limitations outlined in his RFC determination, including the non-exertional limitation restricting plaintiff from working as a team or part of a cooperative work process. AT 14-15, 40. Furthermore, the ALJ's statement of plaintiff's limitations fully encompassed the limitation from working with someone concurrently on a task that the VE testified to during the hearing. As the Commissioner argues, the difference in phrasing between what was contained in the ALJ's hypothetical and the VE's later clarification of what he believed that hypothetical to mean was largely semantic. It is reasonable to assume that a limitation from working as part of a team or cooperative work process would also preclude working concurrently with another on a task. Moreover, even if a different meaning could be ascribed to the VE's statement of his understanding of the ALJ's hypothetical limitation, the ALJ's determination that the VE's testimony, including his clarification, supported the ALJ's step five finding was reasonable. See Tommasetti, 533 F.3d at 1041 (the ALJ may draw reasonable inferences from the record). Accordingly, the ALJ did not err in relying on VE's testimony to support his determination that there existed jobs that plaintiff could have performed in light of her RFC at step five.

      B. *The ALJ Properly Considered the Medical Opinion Evidence in the Record When Determining Plaintiff's RFC*

Next, plaintiff asserts that the ALJ erred in considering the medical opinion evidence when determining plaintiff's RFC. Specifically, plaintiff contends that the ALJ improperly considered the opinion of Dr. Gauch, a State agency examining psychiatrist, because he assigned that opinion "substantial weight" despite the fact that Dr. Gauch opined limitations that the ALJ appeared to impliedly reject by determining that plaintiff had a RFC that did not specifically contain such limitations. In addition, plaintiff argues that the ALJ also erred by assigning "reduced weight" to the opinion of plaintiff's treating physician Dr. Smith without providing specific and legitimate reasons supported by substantial evidence.

/////

/////

6

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

### 1. Dr. Gauch

Dr. Gauch, a State agency examining psychiatrist, issued an opinion regarding the non-exertional functional impact of plaintiff's mental impairments on October 24, 2010, after reviewing plaintiff's then-available medical records and conducting an independent comprehensive psychiatric evaluation of plaintiff. AT 259-64. With regard to plaintiff's mental RFC, Dr. Gauch opined that plaintiff had a "poor" ability to understand and remember detailed instructions, and a "good" ability to accept instructions from a supervisor and interact with coworkers. AT 264. Dr. Gauch opined that plaintiff had a "fair" ability to perform all other

work-related mental functions, including understanding and remembering very short and simple instructions, maintaining concentration and attention, and dealing with various changes in the work setting.  Id.

The ALJ assigned Dr. Gauch's opinion "substantial weight" because it comported with plaintiff's treatment records indicating that the symptoms of plaintiff's depression, anxiety, and bipolar disorder were well controlled with medication.  AT 17.  Plaintiff does not appear to contend that this reasoning was improper.  Rather, plaintiff argues that the limitations contained in the ALJ's RFC determination did not reflect Dr. Gauch's functional findings, therefore implying that the ALJ improperly rejected certain aspects of Dr. Gauch's opinion without providing any reasons for doing so.  Plaintiff asserts that the ALJ's RFC determination did not take into account many of the specific limitations contained in Dr. Gauch's opinion, such as Dr. Gauch's determinations that plaintiff had a "fair" ability to understand and remember simple instructions and maintain concentration and attention, and a "poor" ability to understand and remember complex instructions.

As the Ninth Circuit Court of Appeals has held, an ALJ may interpret assessed limitations into an RFC assessment without repeating each functional limitation verbatim in the RFC assessment provided that the limitations contained in the RFC determination accurately capture the claimant's level of functioning supported by the evidence.  Stubbs-Danielson, 539 F.3d at 1173-74.  Here, the ALJ's RFC determination was consistent with Dr. Gauch's findings, including those plaintiff argues the ALJ impliedly rejected.  Indeed, the ALJ's determination that plaintiff was limited to only simple, routine tasks rated at SVP levels 1 and 2 properly incorporated the limitations identified in Dr. Gauch's opinion relating to attention and concentration, memory, and adaption.  See id. (holding that an ALJ's RFC assessment that a claimant could perform simple, repetitive, routine tasks adequately captured restrictions related to attention, concentration, pace, and adaption opined by the claimant's physicians).  Similarly, the ALJ's RFC limitation restricting plaintiff from working as part of a team or cooperative work process adequately captured the social limitations opined by Dr. Gauch.  Accordingly, the ALJ did not err in his assessment of Dr. Gauch's opinion.

2. Dr. Smith

Dr. Smith acted as plaintiff's treating physician for a roughly 9-year period. AT 282. On October 3, 2012, Dr. Smith issued a mental medical source statement that opined on the non-exertional limitations caused by plaintiff's mental impairments. AT 282-85. Therein, Dr. Smith diagnosed plaintiff with bipolar disorder and assessed her with a Global Assessment of Functioning ("GAF") score of 40.[2] AT 282. With respect to plaintiff's mental RFC, Dr. Smith opined that plaintiff had "marked" difficulties in the following areas of mental functioning: ability to understand, remember, and carry out detailed instructions; ability to maintain attention and concentration for periods lasting approximately two hours in length; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to sustain an ordinary routine without special supervision; ability to work in coordination with or proximity to others without being unduly distracted by them; ability to complete a normal workday and/or workweek without interruption; ability to interact appropriately with supervisors, coworkers, and the general public; ability to respond appropriately to changes in the work setting; and ability to set realistic goals and make plans independently of others.[3] AT 283-84. Dr. Smith also opined that plaintiff had "moderate" limitations with regard to her abilities to make simple work-related decisions, ask simple questions or request assistance, and be aware of normal workplace hazards and take appropriate precautions.[4] Id. Dr. Smith found plaintiff to have mild limitations with regard to all other aspects of performing mental work-related functions. AT 283. Dr. Smith opined that plaintiff's limitations would last at their assessed levels of severity for a

---

[2] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000). A GAF score of 40 indicates serious symptoms or serious impairment in school, social or occupational functioning. DSM IV-TR at 34.

[3] Dr. Smith defined "marked" to mean that plaintiff's mental impairment would hinder her effective performance of these tasks for a total of more than 20% in an 8-hour workday or 40 hour workweek. AT 283.

[4] Dr. Smith defined "moderate" to mean that plaintiff's mental impairment would hinder her effective performance of these tasks for a total of between 11% and 20% in an 8-hour workday or 40 hour workweek. AT 283.

9

continuous period of 12 months. AT 284. Finally, Dr. Smith opined that while plaintiff was capable of performing low stress jobs, she would need to be absent an average of more than four days per month as a result of her mental impairment. Id.

In support of his determination that Dr. Smith's treating opinion was entitled to "reduced weight," the ALJ provided the following rationale:

> I give Dr. Smith's opinion reduced weight as the treatment records from San Joaquin Behavioral Health indicating the claimant's depression and anxiety/bipolar disorder symptoms were controlled with medication and she had no complaints other than depressed mood. Further, the claimant had repeatedly been assessed with a GAF of 60. In fact, Dr. Smith found the claimant's symptoms were controlled and assessed her with a GAF of 60 only a few months earlier.

AT 18 (citations to the record omitted).

In essence, the ALJ discounted Dr. Smith's opinion because it was too restrictive in light of the other medical evidence in the record, including Dr. Smith's own clinical findings. This constituted a specific and legitimate reason for discounting Dr. Smith's opinion that was supported by substantial evidence in the record. See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding that the existence of incongruities between a treating physician's objective medical findings and that physician's opinion constitutes a specific and legitimate reason for the ALJ to reject that physician's opinion concerning the claimant's functional limitations); Rollins, 261 F.3d at 856 (holding that the ALJ properly discounted a treating physician's functional recommendations that "were so extreme as to be implausible and were not supported by any findings made by any doctor," including the treating physician's own findings).

As the ALJ highlighted in his decision, over the course of the months prior to issuing her opinion, Dr. Smith found that plaintiff's mental symptoms were well controlled with medication and assessed her with a GAF score of 60.[5] AT 287, 290-91, 293-95. Similarly, about a month after Dr. Smith issued her opinion, her medical notes continued to show that plaintiff's symptoms

---

[5] A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers). DSM IV-TR at 34.

1  were under control and that Dr. Smith assessed plaintiff with a GAF score of 60.  AT 289.  The
2  fact that Dr. Smith's own clinical notes indicate that plaintiff had only moderate symptoms and
3  that plaintiff's mental impairments were well controlled with medication both in the months
4  before and after she issued her opinion finding those same impairments caused numerous
5  "severe" limitations provided the ALJ with substantial evidence in support of his determination
6  that Dr. Smith's opinion was too limiting.[6]  Furthermore, plaintiff's treating records from
7  throughout the relevant period show that plaintiff's mental symptoms were well controlled while
8  she was on medication and that her mental condition was steadily improving.  AT 234, 240, 243,
9  247, 256, 274-75.  In short, substantial evidence from the record supported the ALJ's
10 determination that Dr. Smith's opinion was entitled to reduced weight.

11      Plaintiff argues that the ALJ failed to take into account that Dr. Smith was a treating
12 psychiatrist, a specialist regarding plaintiff's mental impairments, as evidenced by the fact that
13 the ALJ refers to Dr. Smith only as a treating physician in his written decision.  Plaintiff contends
14 that Dr. Smith's opinion was entitled to greater deference because of her designation as a treating
15 specialist, which the ALJ did not give when assessing plaintiff's RFC.  However, for the reasons
16 discussed above, the ALJ properly determined, with substantial support from the record, that the
17 highly restrictive functional findings opined by Dr. Smith conflicted with the clinical evidence in
18 the record, therefore reducing the probative value of Dr. Smith's opinion.  The fact that Dr. Smith
19 was a specialist concerning plaintiff's impairments does not mean that the ALJ was precluded
20 from assigning lesser weight to her opinion on the basis that it conflicted with substantial clinical
21 evidence found both in her own treating notes and the medical record more generally.
22 Accordingly, the ALJ was permitted to find that Dr. Smith's opinion was entitled to reduced
23 weight regardless of the fact that Dr. Smith was a treating specialist.
24 /////
25 /////
26

---

[6] The court acknowledges that while this medical evidence was developed after the relevant period, it still supported the ALJ's decision to discount Dr. Smith's opinion because it shows that the functional limitations she opined conflicted with her own objective clinical findings.

11

Plaintiff also contends that the ALJ inappropriately considered the differences between the GAF score Dr. Smith assessed to plaintiff in her opinion and the GAF scores found in both Dr. Smith's own clinical notes and elsewhere in the record. Plaintiff asserts that the ALJ's consideration of plaintiff's GAF scores was improper because such scores are not standardized, need supporting detail in order to have any probative value, and have been done away with in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders. This argument is frivolous. First, the ALJ noted that the large differences between the GAF score Dr. Smith assessed plaintiff in her opinion and those Dr. Smith assessed in the months prior to and after the date on which she issued her opinion. It was reasonable for the ALJ to presume that the same physician would not assess a lower GAF score to plaintiff in one instance and a higher one in another instance without that physician intending the higher score to signify a greater ability with regard psychological functioning that that reflected in the lower score. Similarly, the ALJ was also permitted to infer that a single physician's continued assessment of the same GAF score over time indicated that physician's belief that plaintiff's mental functioning remained relatively stable. The ALJ drew such reasonable inferences from plaintiff's GAF scores in the record in support of his decision. AT 18. Moreover, the treating notes in the record containing the GAF scores the ALJ referred to in his decision were accompanied by objective clinical findings indicating that plaintiff's mental impairments caused no more than moderate functional limitations such that the ALJ could reasonably rely on that score as an accurate indication of plaintiff's mental functioning. E.g., AT 234, 247, 256, 287. Accordingly, the ALJ did not err in relying in part on plaintiff's GAF scores in the record to support his determination that Dr. Smith's opinion was entitled to reduced weight.

V.   CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 17) is granted;

/////

/////

and

      3.  Judgment is entered for the Commissioner.

Dated:  March 1, 2016

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

11 garcia0384.ss